DAVIS, Chief Justice.
[¶1] Vanessa Rodriguez entered a conditional guilty plea to a felony charge of possession of a controlled substance, marijuana. She reserved the right to appeal the district court's denial of her motion to suppress her statements to highway patrol troopers and the marijuana they subsequently found in her car. We conclude that the district court did not err in denying that motion, and we affirm.
ISSUES
[¶2] Ms. Rodriguez states a single issue: Did the district court err in denying her motion to suppress?
FACTS
[¶3] At 11:43 a.m. on December 1, 2016, Wyoming Highway Patrol Trooper William Beres was patrolling on Interstate 25 in Johnson County. He stopped a light blue Buick with Colorado plates for speeding, specifically for traveling at 105 miles per hour in an 80 mile per hour zone. As he approached the driver's side of the car, he noticed three occupants: the driver, a front-seat passenger, and an infant girl in a car seat in the back seat.
[¶4] Trooper Beres explained the reason for the stop and asked why they were speeding. The driver said the passenger was eight months pregnant and there was some sort of medical emergency. The trooper asked about their travel plans. He was informed that they *769 were driving from Laramie to Sheridan to visit the passenger's grandfather. Trooper Beres noticed that the driver was not wearing a seat belt.
[¶5] The trooper asked the driver for his license, vehicle registration, and proof of insurance. The driver said he did not have a license, and he volunteered that the passenger was the owner of the vehicle. He claimed his name was "Joe Bravo," and struggled to state his date of birth. Trooper Beres believed that the driver was lying because he took a while to come up with a name and date of birth, and he seemed overly nervous. Trooper Beres asked the passenger for her driver's license. She produced a Colorado license identifying her as Vanessa Rodriguez. She informed the trooper that she had no proof of insurance for the vehicle.
[¶6] Trooper Beres asked the driver to get out of the car. He frisked him before placing him in the back seat cage of the patrol car. Trooper Beres then contacted another state trooper, William Kirkman, because Trooper Beres had "the trooper's intuition that something is not right here and [wanted] to have the backup officer here for officer safety reasons." During this time, the driver told Trooper Beres that the passenger was "his woman," which the trooper took to mean that she was the driver's girlfriend, fiancé, wife, or significant other.
[¶7] Trooper Beres then returned to the passenger side of the Buick to talk with Ms. Rodriguez. He confirmed with Ms. Rodriguez that she did not need medical attention. He asked her who the driver was. Ms. Rodriguez said that the driver was her friend "Joe," that she had met him in California a few years ago, and that he was a friend of her father. She denied that the driver was the father of her infant daughter or unborn child. Because her answers were inconsistent with the driver's, Trooper Beres believed she was lying about the driver's identity. He warned her that she could go to jail for lying to him, but he was willing to "start over fresh" with her. He also warned her that if she were arrested for lying to him, the Wyoming Department of Family Services would take her infant child.
[¶8] Trooper Beres then returned to his car to check on the information given to him by "Joe Bravo" and on the Colorado driver's license provided by Ms. Rodriguez. The dispatcher could locate no records concerning "Joe Bravo." The information concerning Ms. Rodriguez's license indicated that she had obtained a protective order preventing a man named Jesse Grijalva from having contact with her. The physical description of Mr. Grijalva closely matched that of the driver who had identified himself as "Joe Bravo." Trooper Beres believed the driver was, in fact, Mr. Grijalva, the subject of Ms. Rodriguez's protective order.
[¶9] Trooper Kirkman, who is part of a K-9 unit, arrived to assist. Together, they resumed questioning Ms. Rodriguez. When asked if the driver was Jesse Grijalva, she acknowledged that he was, and admitted she had lied about his identity. She also revealed that Mr. Grijalva was the father of both the infant girl in the car seat and the child with whom she was pregnant. Ms. Rodriguez did not deny that she had obtained a protective order against Mr. Grijalva, but she insisted that it had been lifted by this time.
[¶10] Trooper Beres told Ms. Rodriguez that he was suspicious of something else going on because they both had lied about Mr. Grijalva's identity, and he asked if there was anything illegal in the car. In response to questioning by Trooper Kirkman, Ms. Rodriguez admitted to possessing medical marijuana from Colorado for her anxiety. She said the marijuana was located in a diaper bag on the floor in the back of the car, and that there were eight ounces there. Trooper Beres moved Ms. Rodriguez and the infant into Trooper Kirkman's vehicle. At no time during her detention was Ms. Rodriguez handcuffed or otherwise physically restrained, and neither trooper drew his firearm.
[¶11] Trooper Kirkman then brought his dog to the car. The dog alerted, and Trooper Kirkman removed a shopping bag from the diaper bag near the back seat. The shopping bag contained eight individually packaged baggies of marijuana.
[¶12] Both Ms. Rodriguez and Mr. Grijalva were arrested. The Wyoming Department of *770 Family Services took the infant. Only after the arrest did Trooper Beres receive confirmation that Ms. Rodriguez was correct that the protective order was no longer valid. Ms. Rodriguez was charged with one count of felony possession of a controlled substance and one count of misdemeanor interference with a peace officer.
[¶13] Ms. Rodriguez filed a motion to suppress the statements she made to Troopers Beres and Kirkman, along with the evidence-the marijuana-the troopers found after her statements. She claimed, in summary, that her detention and the search of her vehicle were unreasonable under the totality of the circumstances, and that her statements had not been made voluntarily. The district court held a hearing on the motion, during which both Trooper Beres and Trooper Kirkman testified, and the court received video offered by the State from the camera Trooper Beres was wearing at the time of the stop and arrest. After the district court denied the motion, Ms. Rodriguez entered a conditional guilty plea to the felony charge of possession of a controlled substance. In return, the State agreed to dismiss the misdemeanor charge of interference with a peace officer.
[¶14] As part of the conditional plea, Ms. Rodriguez reserved the right to appeal the district court's denial of her motion to suppress. She was sentenced to serve two to four years of incarceration, which was suspended in favor of two years of supervised probation. Ms. Rodriguez filed a notice of appeal, bringing her case before us now.
STANDARD OF REVIEW
[¶15] When faced with a challenge to the denial of a motion to suppress, we adopt the district court's factual findings unless the defendant proves that the findings are clearly erroneous. Jennings v. State , 2016 WY 69, ¶ 8, 375 P.3d 788, 790 (Wyo. 2016). We "view the evidence in the light most favorable to the trial court's determination because the trial court has an opportunity at the evidentiary hearing to assess the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions." Lindsay v. State , 2005 WY 34, ¶ 21, 108 P.3d 852, 858 (Wyo. 2005). The ultimate question of whether the search or seizure was legally justified, however, is a question of law we review de novo. Jennings , ¶ 8, 375 P.3d at 790.
DISCUSSION
[¶16] There are two main prongs to Ms. Rodriguez's argument that the district court erred in denying her motion to suppress. First, she asserts that the troopers' detention and questioning of her after the traffic stop was unreasonable under the circumstances. Second, she claims that her statements to the troopers were involuntary and nonconsensual. We consider each claim in turn.
A. The reasonableness of the troopers' actions
[¶17] The Fourth Amendment of the United States Constitution protects individuals from unreasonable searches and seizures: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. Article 1, Section 4 of the Wyoming Constitution also provides protections against unreasonable searches and seizures: "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated." Wyo. Const. art. 1, § 4. Trooper Beres's traffic stop of Ms. Rodriguez "constitutes a seizure within the meaning of the Fourth Amendment." Garvin v. State , 2007 WY 190, ¶ 13, 172 P.3d 725, 728-29 (Wyo. 2007).
[¶18] In her brief, Ms. Rodriguez presents a well-developed argument that the state constitution provides even greater protections against unreasonable searches and seizures than does the federal constitution. We agree that, as she claims, our state constitutional provision is stronger than its federal counterpart because it requires search warrants to be supported by written affidavits. State v. Peterson , 27 Wyo. 185, 198, 194 P. 342, 345 (1920). However, no search warrant is at issue in this case.
[¶19] Ms. Rodriguez further maintains that the state constitutional provision is *771 more protective because it requires a search to be "reasonable under all the circumstances." For this proposition, she relies on Vasquez v. State , 990 P.2d 476, 488-89 (Wyo. 1999), in which we held that a vehicle search was proper under the federal constitution because it was incident to a lawful arrest, and also under the state constitution because it was incident to a lawful arrest and "reasonable under all the circumstances." See O'Boyle v. State , 2005 WY 83, ¶ 26, 117 P.3d 401, 409 (Wyo. 2005). But while Vasquez does indicate that our state constitution provides greater protection than the federal constitution, the test we apply under the federal constitution is notably similar to Vasquez's "reasonable under all the circumstances" test.
To summarize, the standards applicable in considering the constitutionality of traffic stops under the Fourth Amendment are as follows: An officer's actions during a traffic stop must be reasonably related to the purpose of the stop. Absent valid consent, a reasonable suspicion of other unlawful activity or reasonable suspicion that a detainee is armed, an officer may not expand an investigative detention beyond the scope of the stop, ask questions unrelated to the stop or embark on a fishing expedition in the hope that something will turn up. The relevant question is whether the scope of the stop was reasonable under the totality of the circumstances [.]
O'Boyle , ¶ 49, 117 P.3d at 415 (emphasis added; internal citations and quotation marks omitted). Given the facts of Ms. Rodriguez's case, we would reach the same result whether we test for reasonableness under "all the circumstances" or under "the totality of the circumstances." Accordingly, there is no need to resolve Ms. Rodriguez's contention that the state constitution provides stronger protections against unreasonable searches and seizures.
[¶20] Ms. Rodriguez does not contend that the initial traffic stop was improper. Her claim is that the troopers' detention and questioning of her after the traffic stop were unreasonable. As set forth above, the troopers' actions are considered proper if they were reasonably related to the purpose of the stop, and if the extension of the detention and questioning was justified by reasonable suspicion of other unlawful activity. O'Boyle , ¶ 49, 117 P.3d at 415. See also Eckenrod v. State , 2003 WY 51, ¶ 13, 67 P.3d 635, 639-40 (Wyo. 2003) ("The investigatory stop ... requires only the presence of specific and articulable facts and rational inferences which give rise to a reasonable suspicion that a person has committed or may be committing a crime.").
[¶21] Trooper Beres initially stopped Ms. Rodriguez's vehicle for speeding. Having made that stop, it was reasonable for the trooper to ask the driver for his license and vehicle registration. Damato v. State , 2003 WY 13, ¶ 13, 64 P.3d 700, 706 (Wyo. 2003). The driver produced neither, nor did he have proof of insurance. The driver also gave a name and birthdate that the trooper found suspicious. In addition, the driver volunteered that the vehicle belonged to the passenger, and this information led Trooper Beres to ask the passenger for her documentation. She provided a driver's license, but no registration or other proof of ownership, and no proof of insurance.
[¶22] At this point, it was reasonable for Trooper Beres to be suspicious that several crimes were being committed, including driving without a license; driving without insurance, or at least without proof of insurance; driving without seatbelts fastened; and possibly auto theft. Further, Trooper Beres believed that the driver was trying to conceal his identity by giving a questionable name and birthdate, which made it reasonable for him to suspect other potential criminal activity.
[¶23] The passenger's driver's license identified her as Ms. Rodriguez. It was appropriate for Trooper Beres to run a computer check on her license. Damato , ¶ 13, 64 P.3d at 706. The computer check confirmed that Ms. Rodriguez's license was valid, but it also alerted Trooper Beres that a protective order had been issued restricting contact between Ms. Rodriguez and a man named Jesse Grijalva, whose physical description resembled the driver of Ms. Rodriguez's vehicle. Given this information, it was reasonable for Trooper Beres to suspect violations of the *772 protective order. This reasonable suspicion justified the trooper's continuing to detain Ms. Rodriguez and the driver and his asking them additional questions.
[¶24] In response to the additional questioning, Ms. Rodriguez and the driver gave inconsistent answers about their relationship, how and where they met, and the driver's relationship to the infant and unborn child. Such inconsistencies are "one of several factors [supporting] the conclusion the trooper possessed reasonable articulable suspicion to justify continued detention." Flood v. State , 2007 WY 167, ¶¶ 30-32, 169 P.3d 538, 547 (Wyo. 2007). Ms. Rodriguez eventually admitted that the driver was Mr. Grijalva, thereby revealing that she had previously lied about his identity. Thus, while she claimed that the protective order was no longer valid, her previous dishonesty justified Trooper Beres's further efforts to verify the validity of that order, and his further detention of Ms. Rodriguez while he made those efforts.
[¶25] At this point Trooper Beres told Ms. Rodriguez that he was suspicious of other criminal activity, and he asked if there was anything illegal in her car. Trooper Kirkman, who had arrived by this time, asked Ms. Rodriguez a similar question, and she admitted that there was marijuana in the diaper bag in the back seat. Ms. Rodriguez made this statement before Trooper Beres received confirmation that the protective order had been lifted. Given these facts, we conclude that Trooper Beres had "reasonable and articulable suspicion of criminal activity" sufficient to justify the detention and questioning of Ms. Rodriguez. O'Boyle , ¶ 77, 117 P.3d at 422. The troopers' actions were not unreasonable under all of the circumstances or under the totality of the circumstances. The district court properly denied Ms. Rodriguez's suppression motion on this basis.
B. The voluntariness of Ms. Rodriguez's statements
[¶26] Ms. Rodriguez claims that her statements to the troopers should have been suppressed because they were involuntary. She rests this claim on three separate legal bases. First, she claims that she was subjected to custodial interrogation without first having been advised of her constitutional rights pursuant to Miranda v. Arizona , 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Second, she asserts that her statements were involuntary because they were coerced. Third, she claims that her statements were elicited in violation of her rights to due process.
[¶27] It is well established that an individual subject to custodial interrogation must be informed of certain constitutional rights, or else that individual's confessions or other statements will be inadmissible in court. Miranda , 384 U.S. at 444, 86 S.Ct. at 1612. Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id . Ms. Rodriguez acknowledges that Miranda warnings are not generally required for traffic stops "because of their noncoercive and nonthreatening nature." Engdahl v. State , 2014 WY 76, ¶ 17, 327 P.3d 114, 119 (Wyo. 2014) (citing United States v. Perdue , 8 F.3d 1455, 1462 (10th Cir. 1993) ). However, it has been held that police officers must advise suspects of their constitutional rights even in the context of a traffic stop if they "take highly intrusive steps to protect themselves from danger." Perdue , 8 F.3d at 1465. See also Berkemer v. McCarty , 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984) ("[I]f a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by Miranda .").
[¶28] To determine whether a person is in custody, in actuality or for practical purposes, we consider whether a reasonable person in the suspect's position "would have considered himself to be in police custody." Engdahl , ¶ 15, 327 P.3d at 119 (quoting Gompf v. State , 2005 WY 112, ¶ 31, 120 P.3d 980, 988 (Wyo. 2005) ). We examine the totality of the circumstances, focusing on several factors: "(1) whether a suspect is questioned in familiar or neutral surroundings; (2) the number of police officers present; (3) the degree of physical restraint and whether it is comparable to those associated with a formal *773 arrest; and (4) the duration and character of the interrogation." Engdahl , ¶ 15, 327 P.3d at 119 (quoting Jelle v. State , 2005 WY 111, ¶ 14, 119 P.3d 403, 408 (Wyo. 2005) ).
[¶29] In Ms. Rodriguez's case, the questioning took place in neutral surroundings. She was not in a familiar place such as her home, but she was not taken to a police station or detention center. Only Trooper Beres was present during most of the time Ms. Rodriguez was detained, although Trooper Kirkman joined them later. Ms. Rodriguez was not handcuffed or otherwise physically restrained, nor did either trooper draw his firearm. The district court found that the questioning lasted less than twenty-five minutes, and that finding is supported by the record. We believe Trooper Beres was correct when he testified at the suppression hearing that Ms. Rodriguez "was not in custody [though] she was not free to leave while we were still getting to the bottom of the circumstance[s]."
[¶30] That Ms. Rodriguez was not subject to custodial interrogation is illustrated by contrast to the facts of Perdue , cited above.
Mr. Perdue was forced out of his car and onto the ground at gunpoint. He was then questioned by two police officers while police helicopters hovered above. During the questioning, Mr. Perdue remained face down on the ground while the officers kept their guns drawn on him and his pregnant fiancee. The record indicates that physical force and handcuffs may also have been used in the initial detention. Regardless of whether handcuffs and physical force were actually employed, Mr. Perdue's freedom of action was curtailed in a "significant way." Berkemer , 468 U.S. at 435, 104 S.Ct. at 3148.
Furthermore, the use of guns to force a suspect off the road, out of his car, and onto the ground is a type of police conduct more "associated with formal arrest," California v. Beheler , 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983), than with the characteristically "noncoercive" and "nonthreatening" Terry stop. Berkemer , 468 U.S. at 440, 104 S.Ct. at 3150.
Perdue , 8 F.3d at 1464-65. The troopers did not subject Ms. Rodriguez to any such coercive and threatening actions. We conclude that she was detained, but not subject to custodial interrogation. The troopers were not required to give her Miranda warnings during this relatively ordinary traffic stop and detention.
[¶31] However, the "determination that a defendant was subject to custodial interrogation for purposes of Miranda does not answer the separate question of whether any statements given were given voluntarily." Jelle , ¶ 15, 119 P.3d at 408. "A confession is not voluntary if extracted by threats or improper influences or promises." Garcia v. State , 777 P.2d 603, 606 (Wyo. 1989).
[¶32] In its order denying Ms. Rodriguez's motion to suppress evidence, the district court observed:
[T]here was no testimony elicited at the hearing establishing that [Ms.] Rodriguez felt she was coerced or tricked into making any statements to the troopers. [She] relies on the Court assessing the situation from the video tape and determining that from the information on the tape that she was coerced and her statement involuntary. The Court is unable to make that determination. The Court finds that when considering the totality of the circumstances in this matter, [Ms.] Rodriguez's free will was not overcome. Her statements to the troopers were voluntary and not coerced, and the information she offered to law enforcement was freely provided.
We find the district court's factual findings supported by evidence in the record, and further, that they provide a reasonable basis for the district court's conclusion that Ms. Rodriguez gave her statements to the troopers voluntarily and without coercion.
[¶33] Finally, we consider Ms. Rodriguez's claim that her due process rights were violated.
[E]ven though fifth amendment and Miranda violations were not implicated here because Appellant was not in custody at the time of the interrogation ... "the due process clause still stands as [an] independent limitation on the use of a defendant's *774 pretrial statement." 2 D. Rudstein, C. Erlinder, & D. Thomas, Criminal Constitutional Law § 4.01[1] at 4-5 (1990). We, therefore, review Appellant's claim under article 1, section 6 of the Wyoming Constitution : "No person shall be deprived of life, liberty or property without due process of law."
Black v. State , 820 P.2d 969, 971 (Wyo. 1991). "In Wyoming, coercive police tactics violate the due process clause of Wyo. Const. Art. 1, § 6 and statements elicited pursuant to these tactics may be suppressed." State v. Evans , 944 P.2d 1120, 1125 (Wyo. 1997).
[¶34] However, as we have already noted, the district court found that Ms. Rodriguez's statements to the troopers were not coerced. The record supports this finding. The finding, in turn, adequately supports the conclusion that the troopers did not violate Ms. Rodriguez's due process rights. We conclude that the district court reached a sound decision on this basis, as well as on the bases previously discussed. Accordingly, we affirm the decision of the district court to deny Ms. Rodriguez's motion to suppress evidence.