888 A.2d 694

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**James REVERE, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 18, 2004.

Decided Dec. 28, 2005.

Ellen T. Greenlee, Karl Baker, Karl Lawrence Morgan, Philadelphia, for James Revere.

Hugh J. Burns, Peter Carr, Philadelphia, for Com.

Before: CAPPY, C.J., CASTILLE, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

*OPINION*

Justice CASTILLE.

This Court granted limited review to consider the propriety of the Superior Court's recognition of an exigent circumstances exception to the probable cause analysis employed in *Commonwealth v. Lovette,* 498 Pa. 665, 450 A.2d 975 (1982). For the reasons that follow, we hold that exigent circumstances may justify police transporting a suspect a short distance in the absence of probable cause during the course of an investigative detention pursuant to *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); or stated another way, we conclude that, where exigent circumstances exist, a brief detention and transportation in a police vehicle does not automatically constitute an arrest which must be supported by probable cause. Accordingly, we affirm.

Appellant was arrested on July 2, 1997 and charged with violations of the Uniform Firearms Act, 18 Pa.C.S. §§ 6101–6162, specifically, carrying a firearm without a license, *id.* § 6106, and carrying a firearm on a public street or public property in Philadelphia. *Id.* § 6108. Appellant filed a motion to suppress the firearm found on appellant which formed the basis for the prosecution, citing both Article 1, Section 8 of the Pennsylvania Constitution,[1] and the Fourth Amendment of the United States Constitution.[2] A suppression hearing was held on February 2, 1998 before the Honorable James J. Fitzgerald, III.

1. Article I, Section 8 provides:

 The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.
 Pa. CONST. Art. I, § 8.

2. The Fourth Amendment provides:

 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
 U.S. CONST. amend. IV.

The sole witness to testify at the suppression hearing was Philadelphia Police Officer Broderick Mason. Officer Mason testified that, at approximately 9:50 a.m. on July 2, 1997, he and his partner, Officer Carl Selby, were patrolling the area around 2500 North Chadwick Street in North Philadelphia in response to complaints received about the high volume of drug sales in the area. The officers were in plainclothes and riding in an unmarked police vehicle. After Officer Selby parked on Huntingdon Street near 17th Street, Officer Mason walked one block over to Chadwick Street, sat on a step and began reading a newspaper, "trying to blend in." Shortly thereafter, Officer Mason observed three men—appellant, Charles Felder and an unidentified man—sitting on the steps six to seven houses away from his location, at 2509 North Chadwick Street. A woman approached Felder, who retrieved a clear plastic baggy from his pocket, took money from her and, in exchange, gave her objects from the baggy. The woman then walked away and Felder placed the baggy in the gas cap of a nearby automobile.

Officer Mason believed that he had just witnessed a drug transaction.[3] The officer returned to his partner, and they began to patrol the area in their unmarked police vehicle. One block from where the transaction occurred, the officers saw the same three men. They left their vehicle, identified themselves as police officers, displayed their badges, and attempted to stop the men. Appellant and Felder heeded the officers' directives, but the third male ran. Two uniformed female police officers in the immediate vicinity pursued the fleeing male.

Soon thereafter, Officers Mason and Selby heard the female officers "screaming and hollering." Fearing that their fellow officers might be in danger or in need of assistance, Officers

---

**3.** At the time of the surveillance, Officer Mason was a seven-year police veteran who had been involved in 50–60 undercover surveillances, as well as surveillances conducted in uniform. Officer Mason also testified that the area was "a very large narcotics area," that he had made between 30 and 40 narcotics arrests in the area, and that he had arrested people for possessing illegal firearms in the area as well. N.T. 2/2/98, at 13–14.

Mason and Selby instructed appellant and Felder to place their hands on their heads and to enter the back of the unmarked police vehicle.[4] The officers did not handcuff appellant or Felder, nor did they frisk them for their safety before placing them into the vehicle. The officers also did not have their guns drawn. The officers then drove around the block toward the direction of the female officers' screams, which proved to be the approximate location of the prior alleged drug transaction. When Officers Mason and Selby arrived, the female officers informed them that the screams that they had heard were directed to the unidentified man to get him to stop, but the man had escaped. N.T. 2/2/98, at 5–9, 11–19.

Immediately thereafter, the officers told appellant and Felder to exit the police vehicle and they then resumed their investigative detention. Officer Selby performed a pat-down of Felder, recovering a clear plastic baggy containing thirty-nine black-tinted, small packets of crack cocaine. During Officer Selby's pat-down of Felder, and before appellant could be frisked, Officer Mason noticed appellant shaking his right leg. Officer Mason saw something slide down appellant's pants leg, heard a thump as the object hit the ground, and then saw appellant kick the discarded object under the police vehicle. Officer Mason looked under the vehicle and recovered a loaded, .38–caliber handgun. He then arrested appellant. A search incident to arrest yielded $1105 in United States currency and three rounds of .38–caliber ammunition from appellant's pocket. *Id.* at 9–10.

At the close of the evidence, appellant argued that he was under arrest once police placed him in the police vehicle, that police lacked probable cause to effect that arrest, and that the illegal arrest tainted the subsequent seizure of evidence.

4. Officer Mason explained his concern for the female officers as follows:

> For their safety we wanted to make sure that if we could try to catch up to them if they apprehended the guy or whatever that nobody got hurt. If not, we would have conducted everything right at that location, but once it happened so fast, we just put the guys in the car and took off.

N.T. 2/2/98, at 16–17.

Judge Fitzgerald took the motion under advisement and then on March 3, 1998, issued findings of fact and conclusions of law, in which he denied appellant's motion to suppress. The court found that, upon observing what appeared to be an illegal drug transaction by Felder, police had probable cause to arrest Felder, but that they lacked probable cause to arrest appellant up until the time the gun fell from his pants leg. However, the court concluded that appellant's presence with Felder, a suspected drug dealer, at the scene of the transaction and at the scene of Felder's arrest, gave police reasonable, articulable suspicion that appellant might also be armed and dangerous, such that they could lawfully perform a *Terry* stop and frisk for their own safety. The court also found that exigent circumstances existed which justified Officers Mason and Selby in interrupting their stop of appellant and Felder, *i.e.*, they "were required to aid their fellow officers who were attempting to apprehend the fleeing male." [5] Further, the court held that, under the totality of the circumstances— including the reasons for the transportation, its short duration, the short distance of transportation, and the fact that appellant was not handcuffed—the mere placement of appellant in the police vehicle did not convert the investigative detention into an arrest. With respect to the seizure of the firearm, the court found that once the firearm fell from appellant's pants leg, police had probable cause to arrest him; the subsequent search of appellant and the seizure of ammunition and currency therefore were lawful as an incident to that arrest.

**5.** The term "exigent circumstances" has become a term of art, and generally describes a situation where a more orderly process must yield to an urgent necessity for immediate action. For example, this Court has defined exigent circumstances to include situations where there is a "need to protect or preserve life or avoid serious injury," *Commonwealth v. Wright*, 560 Pa. 34, 742 A.2d 661, 666 (1999) (Castille, J., concurring and dissenting), "where a life threatening emergency exists," *Commonwealth v. Gribble*, 550 Pa. 62, 703 A.2d 426, 435 n. 18 (1997) (citing *Commonwealth v. Maxwell*, 505 Pa. 152, 477 A.2d 1309 (1984)), or "where there is a threat of physical harm to police officers or other innocent individuals." *Gribble*, 703 A.2d at 435 n. 18 (Pa. 1997) (citing *Commonwealth v. Ehrsam*, 355 Pa.Super. 40, 512 A.2d 1199 (1986), *appeal denied*, 515 Pa. 573, 527 A.2d 535 (1987)).

Appellant proceeded to a bench trial before the Honorable John J. O'Grady and was convicted of both firearms charges. On March 5, 2001, appellant was sentenced to nine to twenty-three months of incarceration to be followed by two years of reporting probation.

On appeal, a Superior Court panel initially reversed in a 2–1, unpublished memorandum opinion, citing *Lovette* for the bright-line proposition that "[p]lacing a suspect into a police vehicle in order to transport him to the scene of the offense is an arrest and must be supported by probable cause" which, in this case, was lacking at the time of transport. However, the panel subsequently reconsidered and vacated its order. On November 20, 2002, the panel issued a published, 2–1 decision which affirmed the judgment of sentence. *Commonwealth v. Revere*, 814 A.2d 197 (Pa.Super.2002).

The new panel majority, in an opinion authored by the Honorable Peter Paul Olszewski, found that the circumstances surrounding appellant's detention prior to the discovery of the gun did not exceed the limits of an investigatory detention. The majority reasoned that those circumstances—brief duration, no force, no restraints, and the short distance of transportation—revealed that the detention "avoided the coercive characteristics associated with an arrest." *Revere*, 814 A.2d at 200. Thus, the majority concluded that the officers required only reasonable suspicion to justify their seizure and transportation of appellant. The majority then determined that the officers had reasonable suspicion to stop Felder because of the narcotics transaction they believed they had observed him conduct; and, under Superior Court authority, there was also reasonable suspicion to stop appellant as he was Felder's companion. *Id.* at 201 (citing *Commonwealth v. Kearney*, 411 Pa.Super. 274, 601 A.2d 346, 348 (1992) ("When a person is suspected of presently committing a crime, a reasonable suspicion develops that his companion is also involved, even though the companion's only suspicious action was being in the company of the suspect.")).

The majority also rejected appellant's argument that this Court's decision in *Lovette* compelled a finding that he was

under arrest once he was placed in the police vehicle and transported. In the majority's view, appellant "misread" *Lovette* as establishing such a *per se* rule. *Lovette* "clearly indicates that when such an action is justified, placing a suspect into a police vehicle in order to transport him to the scene is not an arrest and need not be supported by probable cause." *Revere*, 814 A.2d at 200. The majority recognized that, under the facts in *Lovette*, this Court found that an arrest had occurred; however, the majority deemed it significant that *Lovette* had suggested that transporting a suspect during an investigative detention could be justified by exigent circumstances. The majority then concluded, as the suppression court had, that exigent circumstances in fact existed in the case *sub judice*—to wit, the officers' belief that the screams of their fellow officers suggested they were in physical danger—and that placing appellant in the car while driving to investigate those screams was a proper, limited response to the exigency.

> Officers Selby and Mason heard shouts and screams from the officers who pursued the unidentified man. To have ignored these screams in order to complete the investigative stop of appellant and Felder would have required Officers Selby and Mason to have ignored the calls of their fellow officers. Alternatively, Officers Selby and Mason would have had to abandon their investigation to respond to the shouts. Such choices, it seems, are those that the language in *Lovette* was intended to allow police to avoid making. As such, the facts in the record support the suppression court's finding that exigent circumstances were present prior to appellant being transported in the police vehicle.

*Id.* at 201. President Judge Joseph A. Del Sole filed a dissenting statement, briefly noting his view that *Lovette* "requires a different result." *Id.* at 201–02.

Appellant sought further review in this Court, which was granted, but limited to the issue of, "[w]hether the Superior Court erred in reading an exigent circumstances exception into the probable cause requirement announced by this Court

in *[Lovette]." Commonwealth v. Revere,* 575 Pa. 166, 835 A.2d 707, 708 (2003) (per curiam).

▮▮▮ Appellant takes an absolutist position on the narrow question accepted for review, arguing that the act of placing him in the police vehicle and transporting him one block exceeded the scope of a *Terry* stop and constituted an arrest, that such arrests are lawful only if supported by probable cause, and that, at the time of the transportation here, probable cause did not exist.[6] Appellant notes that *Terry* and *Commonwealth v. Hicks,* 434 Pa. 153, 253 A.2d 276 (1969), establish a limited exception to the default rule of probable cause which is ordinarily required to justify police seizures of the person. Appellant asserts that both this Court and the U.S. Supreme Court have resisted efforts to substitute a multi-factor balancing test for the traditional probable cause test in arrest situations.[7] Appellant then argues that a court applying the *Terry* exception of necessity must require that the police response be kept as narrowly intrusive as possible.

**6.** At the suppression hearing, appellant invoked both Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution, without arguing that the protections involved were different in this circumstance. In his presentation on appeal, appellant stresses Article I, Section 8 in his Statement of Questions and argument heading, but the argument itself relies heavily upon Fourth Amendment decisional law; and, there is no claim made for a distinct and different approach under the Pennsylvania Constitution than under the Fourth Amendment. Additionally, we note that *Lovette,* the proper interpretation of which is the central question, does not announce a rule that was deemed peculiar to our state charter. Finally, as this Court noted in *In re D.M.,* 566 Pa. 445, 781 A.2d 1161, 1163 (2001), "Pennsylvania courts have consistently followed *Terry* in stop and frisk cases, including those in which the appellants allege protections pursuant to Article 1, Section 8 of the Pennsylvania Constitution." In these circumstances, for decisional purposes we will assume that the approach under the two charters is coterminous.

**7.** In support of this proposition, appellant relies upon this Court's decisions in *Commonwealth v. Melendez,* 544 Pa. 323, 676 A.2d 226 (1996), *Commonwealth v. Rodriquez,* 532 Pa. 62, 614 A.2d 1378 (1992), and *Lovette,* 498 Pa. 665, 450 A.2d 975; as well as U.S. Supreme Court decisions in *City of Indianapolis v. Edmond,* 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000), *Atwater v. City of Lago Vista,* 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001), *Ferguson v. City of Charleston,* 532 U.S. 67, 121 S.Ct. 1281, 149 L.Ed.2d 205 (2001), and *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979).

Appellant contends that the police action here went too far under *Terry* because, *inter alia*, one of the officers theoretically could have stayed with appellant and Felder while the other officer drove away to respond to the concern respecting the female officers. The officers' choice of the more intrusive alternative even though made in the heat of the moment, in appellant's view, transformed the encounter into an arrest, thus triggering a probable cause requirement which no exigency, and certainly not the exigency identified by the Commonwealth here, could excuse.[8]

The Commonwealth advocates a more flexible approach to transportations which accompany *Terry* stops, arguing that the police may change the site of an investigative detention when such a movement is a reasonable response to security and safety concerns. The Commonwealth asserts that law enforcement officers who are faced with exigent circumstances during a *Terry* stop should not be required to choose between

**8.** Appellant complicates his argument by rephrasing the issue and by interweaving additional, distinct legal challenges, including: (1) the validity of the initial police stop in light of *Commonwealth v. Lawson*, 454 Pa. 23, 309 A.2d 391 (1973), *Commonwealth v. Banks*, 540 Pa. 453, 658 A.2d 752 (1995), *Commonwealth v. Zhahir*, 561 Pa. 545, 751 A.2d 1153 (2000), and *Kearney*, 411 Pa.Super. 274, 601 A.2d 346; and (2) whether exigent circumstances in fact existed. Appellant states that he has included these "nuances" in case "this Court feels it needs to address any other issues" than the single one granted review. The Commonwealth objects to appellant's forwarding argument on issues beyond the scope of the limited grant of review.

The question of the validity of the initial stop was raised in appellant's allocatur petition, but it was not the subject of our grant of review, while the question of whether exigent circumstances in fact existed was not raised in the allocatur petition. Accordingly, neither of these additional claims will be considered. *Commonwealth v. Travers*, 564 Pa. 362, 768 A.2d 845, 846 n. 1 (2001); *Commonwealth v. Glass*, 562 Pa. 187, 754 A.2d 655, 658 n. 2 (2000); *Commonwealth v. Davis*, 543 Pa. 628, 674 A.2d 214, 216 n. 6 (1996) (citing Pa.R.A.P. 1115(a)(3)); *Commonwealth v. Rush*, 522 Pa. 379, 562 A.2d 285, 288 (1989). For purposes of reviewing the *Lovette* /exigent circumstances question which was granted review, we accept the conclusions of the Superior Court that the officers had reasonable suspicion to conduct a *Terry* stop, and also that exigent circumstances existed. *See Commonwealth v. Mack*, 568 Pa. 329, 796 A.2d 967, 970 n. 3 (2002); *School Dist. of City of Scranton v. Dale and Dale Design and Development, Inc.*, 559 Pa. 398, 741 A.2d 186, 189 n. 2 (1999).

continuing their investigation at either the cost of police safety and security or allowing suspects to flee.

The Commonwealth also submits that the permissibility of reasonably necessary movements of suspects during *Terry* stops, and in particular movements necessitated by exigent circumstances, was implicitly recognized by this Court in *Lovette*. This is so because the *Lovette* Court, in rejecting the government's argument that the encounter there should be viewed as falling within the confines of a *Terry* stop, noted that, "[h]ere we have the added element of a transportation of the suspects from the place of the initial encounter **without exigent circumstances to support that action.**" *Lovette*, 450 A.2d at 980 (emphasis added). The Commonwealth reads *Lovette's* exigent circumstances qualifier as suggesting that, where exigent circumstances indeed are present, transportation of a suspect does not automatically take the encounter outside the confines of *Terry* and into the realm of an arrest. The Commonwealth also argues that this case is distinguishable from *Lovette* because the exigency here was real, and not merely a matter of convenience for police—*i.e.*, the investigating officers did not have the practical option of detaining the suspects at the site of the initial encounter, and did not move the suspects as part of their investigation, but instead were promptly responding to the fact that they heard their fellow officers screaming. The Commonwealth argues that the Superior Court here properly found that the exigent circumstances language in *Lovette* was intended to allow police to avoid making a choice between potentially jeopardizing the lives of their fellow officers or allowing crime suspects to go free without investigation.

In addition to invoking the exigent circumstances qualifier in the *Lovette* opinion, the Commonwealth notes that this Court and the U.S. Supreme Court (as well as numerous other state and federal courts) have approved of police moving suspects during the course of a *Terry* stop in order to maintain the *status quo* or to ensure the safety and security of themselves or their fellow officers.[9] The Commonwealth ar-

9. In support of this assertion, the Commonwealth cites, *inter alia*, *Hayes v. Florida*, 470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985),

gues that the panel majority here correctly applied this authority in holding that the officers did not transform the *Terry* stop in this case into an arrest when they moved appellant in response to perceived exigent circumstances.

 This Court's review of a suppression court's ruling is limited. We are bound by the suppression court's factual findings which are supported in the record, but we are not bound by the court's conclusions of law. *E.g., Commonwealth v. Coleman,* 574 Pa. 261, 830 A.2d 554, 560 (2003); *Commonwealth v. Templin,* 568 Pa. 306, 795 A.2d 959, 961 (2002). In the case *sub judice,* there is no dispute concerning the operative facts found by the suppression court, and the issue of the effect of placing appellant into a police car and transporting him, under *Lovette,* is one of law as to which our review is plenary.

In *Lovette,* a police officer investigating an anonymous report of men with stolen property in a vacant house noticed evidence of the apparent burglary of a nearby home. The owner of the burglarized premises arrived home as the officer was investigating and informed him that the premises had been secured when he left that morning. The officer noticed a trail of muddy footprints on a plot of ground between the burglarized premises and the vacant house where some of the stolen goods had been taken. The officer patrolled the area and saw three males a block and a half from the scene of the burglary; the men attracted his attention because of the mud on their shoes. The officer stopped the trio and asked for identification, which none could produce. The officer decided to transport the trio back to the burglary victim's home, and in anticipation of that transportation, conducted pat down searches which produced a ring and a valuable silver dime from one of the appellant's companions. Following transport, the victim identified the ring and the dime as his property, as

*Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality opinion), and *Commonwealth v. Gwynn,* 555 Pa. 86, 723 A.2d 143 (1998) (plurality opinion), as well as Professor LaFave's legal treatise. *See* 5 Wayne R. LaFave *et al., SEARCH AND SEIZURE,* § 9.2(g) (4th. ed.2004) (collecting cases).

well as a hat that had been found in the appellant's possession. The appellant and his companions were arrested and charged with burglary.

Following Lovette's trial and conviction, and the affirmance of his conviction on direct review, this Court granted further review to consider, *inter alia,* the legality of the police encounter which produced the victim's identification of the stolen goods. We posed the issue as being, "whether placing appellant in a police vehicle, after a 'pat down' search and transporting him to the scene of the burglary constituted an arrest." The Court then stated that, "[u]nder all of the circumstances, it is clear that the placing of appellant and his companions in the police vehicle for the purpose of transporting them to the scene of the offense, without their consent, constituted an arrest as that term has been defined under our cases." Despite this rather broad initial statement, the *Lovette* Court recognized that the Commonwealth was urging that the seizure in this case was a constitutionally permissible *Terry* stop, notwithstanding the traditional definition of an arrest. Notably, the *Lovette* Court did not reject this argument out of hand; rather, the Court concluded that the seizure at issue did not "warrant a departure" from the traditional approach. *Lovette,* 450 A.2d at 978.

The *Lovette* Court went to some length to explain why it rejected the Commonwealth's argument in this regard. First, the Court traced the evolution of the *Terry* exception to the general requirement of probable cause. The Court stressed that *Terry* was indeed an exception and that it should not be extended in a fashion that would swallow the probable cause rule. The Court rejected the Commonwealth's argument concerning the utility to criminal investigations of approving seizures upon less than probable cause, noting that the Court was obliged to balance the character of the particular intrusion against the proffered justification and that the facts at bar were not "so clearly within the *Terry* exception as to warrant a deviation" from the probable cause rule. The fact that the seizure was for investigative purposes rather than to arrest and charge the suspect was not alone dispositive of the

question of Fourth Amendment reasonableness. *Id.* at 979–80. The Court then explained at some length why, on the specific record presented in *Lovette,* it was "not persuaded" that a departure from the probable cause requirement was appropriate:

> The *Terry* exception has been most frequently applied in instances involving merely an involuntary detention. Here we have the added element of a transportation of the suspects from the place of the initial encounter **without exigent circumstances to support that action.** The police had the option of detaining the suspects at the site of the initial encounter and either bringing the complainant to the site for his identification of the questioned articles or taking those items to him. Either situation would present a much stronger case for the position the Commonwealth presently urges. The Commonwealth stresses the limited area traversed in the transportation of appellant. This fact only highlights the ease with which the identification could have been made without the movement of the suspects, which increased the intrusiveness of the encounter. The instant factual situation is also illustrative of the uncertainties attendant to any attempt to expand the *Terry* exception and reinforces the wisdom of scrupulously adhering to the narrow scope of the exception.

*Id.* at 980 (citations omitted) (emphasis added).

We do not read the *Lovette* Court's analysis as purporting to establish, or even as favoring, a bright-line rule that exigent circumstances can never warrant the transportation of a suspect during a *Terry* investigative detention. To the contrary, although the *Lovette* Court strongly reaffirmed the primacy of the probable cause requirement when an arrest is at issue, and also recognized that the movement of a suspect necessarily "increase[s] the intrusiveness of the encounter," it considered the argument proffered by the Commonwealth that the seizure there still could be squared with principles of *Terry.* Ultimately, the rejection of the Commonwealth's *Terry* argument was not articulated in absolute terms, but instead in terms tied to the specific facts of the case: there was no

exigency, and there were less intrusive manners in which that particular investigative detention could have been carried out, *i.e.*, the police could just as easily have transported the victim of the burglary to the scene of the stop to identify the goods, or they could have transported the goods (but not the suspects) to the victim for identification.[10]

The overwhelming weight of Fourth Amendment authority supports a degree of flexibility in the conduct of *Terry* investigative detentions, including a recognition that it may be appropriate to move a suspect during the course of such a detention. First, the Commonwealth is correct that there is language in opinions from the U.S. Supreme Court post-dating *Lovette*—just as there is language in *Lovette* itself—suggesting that safety and security concerns may justify moving a suspect during an investigative detention. *See Hayes*, 470 U.S. at 817 n. 3, 105 S.Ct. at 1647 n. 3 (removal to station house to conduct investigative detention for fingerprinting purposes unlawful in absence of probable cause; noting absence of exigent circumstances); *Royer*, 460 U.S. at 504, 103 S.Ct. at 1328 ("there are undoubtedly reasons of safety and security that would justify moving a suspect from one location to another during an investigatory detention"). Various feder-

10. The lower courts in this matter are not the only tribunals which have recognized that *Lovette* did not purport to establish a categorical ban on the transportation of a suspect during a *Terry* stop. *See Gwynn*, 723 A.2d at 149 (*Terry* stop lawful where suspect was placed in patrol car and then handcuffed after he tried to escape; police actions "constituted permissible preservation of the status quo while the officer confirmed or dissipated his suspicions"); *Commonwealth v. Pine*, 370 Pa.Super. 410, 536 A.2d 811, 815 (1988) (under *Lovette*, placing the "defendant in a police vehicle in order to transport him, absent either the defendant's consent or exigent circumstances, to the scene of the offense so that the complainant could view the objects in the defendant's possession, constituted an illegal arrest without probable cause[.]"); *Commonwealth v. White*, 358 Pa.Super. 120, 516 A.2d 1211, 1214 (1986) (*Lovette* provided that placing a defendant "in a police vehicle and transporting [him] to the scene of an offense, without [his] consent and without exigent circumstances, constituted an illegal arrest without probable cause[.]"); *Whitmill v. City of Philadelphia*, 29 F.Supp.2d 241, 243 (E.D.Pa.1998) (Hart, U.S.M.J.) ("state law permit[s] the transportation of a suspect if exigent circumstances exist[] to justify such transportation;" rejecting contention that any transportation constitutes an arrest) (construing *Lovette* ).

al Circuit Courts of Appeals likewise have recognized that there is no hard and fast rule which prohibits the movement of suspects during the course of an investigative detention; rather, where exigent circumstances exist—and particularly where the exigency involves safety and/or security concerns—such movement is compatible with *Terry* and its progeny.[11] Many of our sister states also have recognized that exigent circumstances may warrant moving a suspect during the course of an investigative detention.[12] Furthermore, even some courts

11. *See, e.g., United States v. $109,179 in United States Currency,* 228 F.3d 1080, 1085 (9th Cir.2000) ("Neither handcuffing a suspect nor relocating a suspect automatically turns a detention into an arrest where these actions are reasonably taken for safety and security purposes."); *Halvorsen v. Baird,* 146 F.3d 680, 685 (9th Cir.1998) ("Moving a suspect from one location to another does not automatically turn a detention into an arrest, where reasons of safety and security justify moving the person."); *United States v. Soto,* 988 F.2d 1548, 1558 (10th Cir.1993) ("Absent exigent circumstances, once the detaining officer removes the detainee from the site of the initial stop, the line between investigative detention and custodial arrest has been crossed, and the transfer must have been supported by probable cause."); *Eberle v. City of Anaheim,* 901 F.2d 814, 819 (9th Cir.1990) ("reasons of safety and security ... justify moving a suspect from one location to another during an investigatory detention"); *United States v. Pino,* 855 F.2d 357, 362 (6th Cir.1988) (directing suspect stopped for traffic violation to drive to nearby overpass proper because justified by safety concerns and movement was not to more institutional setting such as police station or interrogation room); *United States v. Vanichromanee,* 742 F.2d 340, 345 (7th Cir.1984) (when purpose is security or safety, "[t]hat the three were moved from one spot of temporary detention to another did not vitiate the investigatory nature of the stop"); *United States v. White,* 648 F.2d 29, 37 (D.C.Cir.1981) ("Courts have routinely allowed officers to insist on reasonable changes of location when carrying out a *Terry* stop.... The exigencies of the circumstances determine what moves are reasonable in a given situation[.]").

12. *See, e.g., People v. Courtney,* 11 Cal.App.3d 1185, 1192, 90 Cal.Rptr. 370 (Cal.Ct.App.1970) (reasonable to move suspects to police station in order to avoid hostile crowd because "[c]ertainly there was no Fourth Amendment compulsion on the police to choose between an on-the-spot continuation of their investigation at the probable cost of their own safety, or abandoning the investigation"); *People v. Vena,* 122 Ill.App.3d 154, 77 Ill.Dec. 582, 460 N.E.2d 886, 893 (1984) (transportation of detainee to station permissible and not beyond bounds of *Terry* stop in extraordinary situations where that is safest course of action); *Commonwealth v. Blais,* 428 Mass. 294, 701 N.E.2d 314, 316–17 (1998) (safety reasons warrant moving alleged drunk driver to administer sobriety test); *Hunt v. Commonwealth,* 41, Va.App. 404, 585 S.E.2d 827, 832 ( (moving suspect from apartment complex to property office

which have disapproved of *Terry*-based transportations on the specific facts forwarded have suggested, as *Lovette* did, that the result might be different if an exigency existed. For example, *People v. Harris*, 15 Cal.3d 384, 124 Cal.Rptr. 536, 540 P.2d 632 (1975), which Professor LaFave discusses at some length in his treatise, provides a cogent discussion of the competing principles that must be balanced:

> [W]e are disinclined to hold that under no circumstances short of probable cause to arrest may an officer transport a suspect to another location for further interrogation or possible identification.

> \* \* \*

> We can conceive of factual situations in which it might be quite reasonable to transport a suspect to the crime scene for possible identification. If, for example, the victim of an assault or other serious offense was injured or otherwise physically unable to be taken promptly to view the suspect, or a witness was similarly uncapacitated [*sic*], and the circumstances warranted a reasonable suspicion that the suspect was indeed the offender, a "transport" detention might well be upheld. Similarly, the surrounding circumstances may reasonably indicate that it would be less of an intrusion upon the suspect's rights to convey him speedily a few blocks to the crime scene, permitting the suspect's early release rather than prolonging unduly the field detention.

for safety purposes did not convert stop into arrest); *State v. Lund,* 70 Wash.App. 437, 853 P.2d 1379, 1385–87 (1993) (moving person from jailhouse to nearby visitor area "was reasonable for purposes of safety, security and convenience, and it did not exceed the permissible scope of a *Terry* stop"); *Eckenrod v. State,* 67 P.3d 635, 641–42 (Wyo.2003) (forcibly moving suspect across street for safety of police officer and suspect was reasonable and did not turn stop into arrest; "the Fourth Amendment does not mandate that an investigating officer choose between continuing the investigation at the risk of personal safety or abandoning his investigation[.]").

This Court's research has shown no federal (or state) cases to the contrary, *i.e.,* no case setting forth a hard and fast rule which prohibits the movement of suspects during the course of an investigative detention, where exigent circumstances exist.

Ordinarily there exist less intrusive and more reasonable alternatives to pre-arrest transportation. The officers may call or escort the witness to the detention scene for an immediate viewing of the suspect, or if they are able to procure satisfactory identification from the suspect, arrangements may be made for a subsequent confrontation with the witness. In addition, the consent of the suspect may be sought.

\* \* \*

In the instant case, the officers pursued none of these alternative procedures. Instead, they handcuffed the suspects and conveyed them to the [victims'] home. Without arrest and in the absence of an exigency, the initial detention was continued by means of transportation followed by further interrogation. Under the facts of this case the officers' procedures violated defendant's constitutional rights.

*Id.* at 635–36.[13] Finally, another common circumstance where courts have deemed police action consistent with *Terry* is

---

13. *Accord Hayes,* 470 U.S. at 814, 816, 105 S.Ct. at 1646, 1647; *Royer,* 460 U.S. at 504–05, 103 S.Ct. at 1328. *See also United States v. Acosta–Colon,* 157 F.3d 9, 17 (1st Cir.1998) ("Whatever might qualify as reasons of safety and security sufficient to justify moving a suspect from one location to another during an investigatory detention[,] ... the requisite justification cannot rest upon bald assertions, such as those offered by the government here.... The government must point to *some* specific fact or circumstance that could have permitted law enforcement officers reasonably to believe that relocating the suspect to a detention room was necessary to effectuate a safe investigation.") (citations and quotations omitted); *United States v. Obasa,* 15 F.3d 603, 608 (6th Cir.1994) (transport of suspect back to airport police station unreasonable because officer "offered no explanation for his decision to have [the suspect] transported to the police station immediately rather than continuing his investigation at the point of detention. No evidence was produced that any one was in danger or that the stopped taxi created any traffic problems."); *United States v. Baron,* 860 F.2d 911, 915–16 (9th Cir.1988) (Although "the police may move a suspect without exceeding the bounds of the *Terry*-stop when it is necessary for safety or security reasons, when it is the least intrusive method available to achieve the legitimate goals of the stop, and when moving the suspect does not make the circumstances of the detention so coercive that the detention becomes indistinguishable from an arrest," transport and holding of female suspect in darkened bedroom with three male

when police transport a suspect back to the scene of the crime for purposes of a show-up identification, *i.e.,* so as to immediately confirm or dispel reasonable suspicion that the suspect was involved in a recently reported crime.[14]

> police officers for over thirty minutes constituted an arrest.) (citations omitted); *Hicks v. State,* 631 A.2d 6, 12 (Del.1993) ("[T]he presence of the crowd alone … raised no *substantial* security interests. The officer reported no threatening words, acts or other intimidation from the small crowd[.] … [T]he removal of Hicks from the scene of the initial investigation transformed the detention into a seizure requiring probable cause.").

**14.** *See, e.g., Gallegos v. City of Los Angeles,* 308 F.3d 987, 991 (9th Cir.2002) ("For police to draw their guns in ordering Gallegos from the truck, … for police to handcuff Gallegos in the back of a patrol car, … and for police to bring him back to [the scene] … was not, under the circumstances, an unreasonable way of finding out if Gallegos was the person they were looking for."); *United States v. Short,* 570 F.2d 1051, 1054–55 (D.C.Cir.1978) ("Pursuant to [a *Terry* ] stop the officer was free to take the appellant to the nearby scene of the burglary for possible identification, and such an identification would have given the police officer probable cause for arrest.") (footnote omitted); *United States v. Wylie,* 569 F.2d 62, 70 (D.C.Cir.1977), *cert. denied,* 435 U.S. 944, 98 S.Ct. 1527, 55 L.Ed.2d 542 (1978) ("[R]eturning appellant to the suspected scene of the crime, a few feet from where he and the officer were standing, for a brief investigation after which appellant would be free to go if his story checked out … was a reasonable procedure for investigating the suspicious circumstances[.]"); *State v. Mitchell,* 204 Conn. 187, 527 A.2d 1168, 1173 (1987) *cert. denied,* 484 U.S. 927, 108 S.Ct. 293, 98 L.Ed.2d 252 (1987) (transporting suspects to hospital, where victim was located, proper to "pursue a means of investigation that was likely to confirm or dispel their suspicions quickly"); *Buckingham v. State,* 482 A.2d 327, 334 (Del.1984) ("In cases where it is known that a crime has been committed, a suspect may be detained in order to be viewed by eyewitnesses, unless such travel would unduly prolong the detention."); *Speight v. United States,* 671 A.2d 442, 449 (D.C.1996), *cert. denied,* 519 U.S. 956, 117 S.Ct. 375, 136 L.Ed.2d 264 (1996) ("Pursuant to a lawful *Terry* stop police also may transport an individual to a nearby crime scene for a show-up identification."); *People v. Lippert,* 89 Ill.2d 171, 59 Ill.Dec. 819, 432 N.E.2d 605, 609–10 (1982) *cert. denied,* 459 U.S. 841, 103 S.Ct. 92, 74 L.Ed.2d 85 (1982) ("[W]e … consider the transportation of the defendant the short distance involved here for purposes of a showup to have been a legitimate investigatory procedure."); *Commonwealth v. Barros,* 425 Mass. 572, 682 N.E.2d 849, 859 (1997) (suspect's brief detention occasioned by necessity to transport him to scene is reasonable part of an investigatory stop); *People v. Hicks,* 68 N.Y.2d 234, 508 N.Y.S.2d 163, 500 N.E.2d 861, 865 (1986) ("The nonarrest detention including transportation of defendant to the crime scene was within the bounds of a lawful investigatory stop."); *State v. Wheeler,* 108 Wash.2d 230, 737 P.2d 1005, 1007–08 (1987) (permissible and not excessive under *Terry*

 Upon consideration of this significant authority, we are persuaded that a hard and fast rule that would equate placing a suspect in a police vehicle and transporting him with an arrest requiring probable cause, in all instances, would be an arbitrarily crabbed view of *Terry*.[15] Both the Fourth Amendment and Article I, Section 8 serve to protect citizens against unreasonable searches and seizures. *In re D.M.*, 781 A.2d at 1163 (Pa.2001). Indeed, the U.S. Supreme Court has explained that the "central requirement" and the "touchstone" of the Fourth Amendment is reasonableness. *Illinois v. McArthur*, 531 U.S. 326, 330, 121 S.Ct. 946, 949, 148 L.Ed.2d 838 (2001); *Ohio v. Robinette*, 519 U.S. 33, 39, 117 S.Ct. 417, 421, 136 L.Ed.2d 347 (1996). "Reasonableness ... is measured in objective terms by examining the totality of the circumstances. In applying this test we have consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry." *Robinette*, 519 U.S. at 39, 117 S.Ct. at 421; *see also United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). Moreover, the High Court has emphasized that, "rea-

stop to hold burglary suspect, frisk him, handcuff him, place him in patrol car and transport him to scene of crime). *But see State v. Crowder*, 1 Haw.App. 60, 613 P.2d 909, 913 (1980) (defendant deemed to be arrested when taken from street into hotel where theft occurred because defendant not briefly questioned where found and not free to leave); *People v. Bloyd*, 416 Mich. 538, 331 N.W.2d 447, 452 (1982) (defendant deemed to be arrested when he was seized, detained, questioned and transported by police who were investigating a potential break-in); *State v. Guzman*, 752 A.2d 1, 3 (R.I.2000) ("[W]hen Officer Tella seized Guzman on the street, placed him in her locked police cruiser, and then transported him to the murder scene for identification purposes, she arrested Guzman as a matter of law.").

15. We are aware that there is no explicit, binding authority from the U.S. Supreme Court which requires our holding today; that the views of the Circuit Courts, other state courts, and commentators do not bind us; and that we must exercise our own independent judgment upon the question presented. Nevertheless, the fact that the preponderance of authority weighs in favor of flexibility in this instance is significant. *See Commonwealth v. Glass*, 754 A.2d at 660 (Pa.2000) ("[W]here the weight of authority falls so heavily on one side of the equation, a proper respect for the experience and opinion of others who have grappled with the issue counsels that we view somewhat skeptically an argument, such as that proposed by appellant here, that demands the contrary result[.]").

sonableness under the Fourth Amendment does not require employing the least intrusive means." *Board of Education of Independent School District No. 92 of Pottawatomie County v. Earls,* 536 U.S. 822, 837, 122 S.Ct. 2559, 2569, 153 L.Ed.2d 735 (2002). Thus, as the High Court noted in assessing the reasonableness of a *Terry* stop in the face of a claim that the duration of the stop alone transformed it into a *de facto* arrest:

> A court making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing. A creative judge engaged in *post hoc* evaluation of police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished. But the fact that the protection of the public might, in the abstract, have been accomplished by less intrusive means does not, itself, render the search unreasonable. The question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it.

*United States v. Sharpe,* 470 U.S. 675, 686–87, 105 S.Ct. 1568, 1575–76, 84 L.Ed.2d 605 (1985) (citations and quotations omitted).

We hold that there are certain exigencies—and particularly, the need for safety or security in conducting and completing an investigative detention—the existence of which would make it reasonable under the authority of *Terry* and *Hicks* to place a suspect in a vehicle and transport him a short distance during an investigative detention. The reasonableness of the additional intrusion must be measured by the totality of the circumstances, *i.e.,* the exigency and the attending circumstances that caused the exigency. Properly understood, a recognition that such exigencies may warrant transportation during an investigative detention does not exist as some separate "exception" to the general rule that probable cause is necessary to justify an arrest; we are not replacing the salutary probable cause test with a new multi-factor, balancing test. Rather, allowing courts to engage in a totality

of the circumstances analysis which accounts for exigencies arising during an investigative detention is a function of the underlying reasonableness that must exist to justify any *Terry* stop, stops which, by definition, are less intrusive than formal arrests. Viewing transportation of the suspect as some automatic disqualifying factor imposes a rigidity which does not square with the practical realities which powered the *Terry* exception. Accordingly, the Superior Court did not err in holding that exigent circumstances could warrant transportation of a suspect during a *Terry* stop.

Finally, as we have noted above, appellant did not seek, and we did not accept, review of any question concerning whether sufficient exigent circumstances in fact existed in this case so as to justify deferring completion of the *Terry* stop, placing appellant in the police car, and transporting him a single block. It is important to note, however, that the factual circumstances here pertaining to exigent circumstances are materially distinct from those presented in *Lovette*, so that the Superior Court decision cannot be said to conflict with *Lovette*. The purpose of this transportation was not a matter of convenience to police as they presented possible stolen goods to a burglary victim for identification. Police here articulated a specific and particularized reason, based in safety concerns for their fellow officers who had given chase to a third suspect, why they believed it was necessary to interrupt the investigative detention and freeze the circumstances by taking appellant and his companion along while they investigated the shouts of their fellow officers. Moreover, unlike in *Lovette*, police here did not pat appellant down, or seize anything from him, prior to the emergency decision to transport him as they responded to the shouts. Once the police ascertained that the other officers were safe, they immediately resumed and completed their investigative detention.[16]

16. We note that *Dunaway*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824, which appellant cites in support of the inflexible rule he would have this Court adopt, does not support the notion that merely transporting a suspect necessarily transforms a *Terry* stop into a full-blown arrest. In *Dunaway*, the suspect was taken from his home in a police vehicle, transported to the police station and placed in an interrogation room

For the foregoing reasons, we affirm the order of the Superior Court.

Justice NEWMAN and Justice SAYLOR and EAKIN join the opinion.

Justice NIGRO did not participate in the consideration or decision of this case.

Chief Justice CAPPY files a concurring opinion in which Justice BAER joins.

Chief Justice CAPPY, Concurring.

I join the majority under the limited facts in this appeal. I write separately, however, for two reasons: first, to emphasize the limited scope of our holding; and second, to clarify that consideration of the nature of the police response to exigent circumstances is a significant component of the analysis regarding justification for the relocation of a detainee.

Today our Court holds that "where exigent circumstances exist, a brief detention and transportation in a police vehicle does not automatically constitute an arrest which must be supported by probable cause." Majority Opinion at 264, 888 A.2d at 696. As the majority explains, Fourth Amendment jurisprudence has embraced a certain limited degree of elasticity with respect to the scope of a *Terry* stop, *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and has permitted the reasonably necessary involuntary transportation of a detainee during an investigative stop to a different location due to safety concerns. Such action does not transform the temporary seizure pursuant to *Terry* into an arrest. Our narrow holding that exigent circumstances involving the safety of police officers *may* justify police placing a detainee in a police vehicle and transporting that detainee a short distance for a brief period of time during the course of an investigative

for questioning; under those circumstances, the Court found that the suspect was arrested. In the case *sub judice,* the appellant was not taken to the police station and the reason he was transported was to accommodate police concerns for safety, not to accommodate a station-house interrogation. However, the Court did not purport to establish a broader rule than that commanded by these facts.

detention pursuant to *Terry*, and the conclusion that such conduct *does not automatically constitute* an arrest that must be supported by probable cause is consistent with this now generally accepted body of law.[1]

That said, it cannot be overemphasized that an investigatory detention pursuant to *Terry* is in and of itself an extremely limited exception to the constitutional mandate that seizure of our citizens without probable cause is unlawful. *Commonwealth v. Rodriquez*, 532 Pa. 62, 614 A.2d 1378, 1382 (1992); *see also Terry*, 392 U.S. at 29, 88 S.Ct. 1868. Properly placed in this perspective, the extraordinary situations in which police officers may be justified in not only seizing a citizen for a period pursuant to *Terry*, but also further intruding upon the individual's freedom by placing that person in a police vehicle against his will and transporting him to a different locale, necessarily will be exceedingly rare.

Second, I wish to clarify that the analysis of whether the existence of exigent circumstances justifies the placing of a detainee in a police vehicle and transporting him a short distance during an investigative detention includes a reasonably necessary response component. That is to say, and as urged by the Commonwealth throughout its brief, the additional intrusion on a citizen's freedom by placement in a police vehicle and relocation must be a reasonably necessary response to the exigent circumstances or it will exceed the scope of *Terry* and constitute an unconstitutional *de facto* arrest.

If, as in this case, the concept of exigent circumstances is understood as the potential for danger to fellow officers, this

---

1. Appellant James Revere makes no claim that the approach under Article I, Section 8 of the Pennsylvania Constitution is different than that under the Fourth Amendment to the United States Constitution, and thus, the majority properly presumes similarity in legal analysis. Majority Opinion at 270 n. 6, 888 A.2d at 699 n. 6. While our Court has consistently followed *Terry*, in investigative detention cases under the Pennsylvania Constitution, our case law makes equally clear that we are not in any way bound by *Terry* for purposes of Article I, Section 8 jurisprudence and that if *Terry* and its federal progeny evolve to a point that is inconsistent with our Constitution's guarantees, we are free to embrace a standard other than adhered to by the United States Supreme Court. *In the Interest of D.M.*, 566 Pa. 445, 781 A.2d 1161, 1163 (2001).

exigency does not automatically justify the relocation of an individual. Rather, the proper analysis will consist of both a determination of whether exigent circumstances exist (assumed for purposes of this appeal), and whether the officers' conduct was a reasonably necessary response to the exigent circumstances based upon the totality of the circumstances.[2] *Cf. Terry*, 392 U.S. at 20, 88 S.Ct. 1868 (offering that the inquiry is "a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.").[3] Based upon the limited facts present in this appeal, I join the majority in concluding that the police officers' conduct was a reasonably necessary response to the exigent circumstances of concern for the safety of their fellow officers, and thus, did not constitute an arrest.

Justice BAER joins this concurring opinion.

---

2. I agree with the majority that, in performing this inquiry, reviewing courts must appreciate that police are often acting in dangerous and fluid situations and that reviewing courts should not engage in unrealistic second-guessing. Consideration of reasonably less intrusive alternatives should be part of the relevant inquiry and serves to balance the concerns of citizens and law enforcement officers. *See, e.g., Commonwealth v. Lovette*, 498 Pa. 665, 450 A.2d 975, 980 (1982) ("The police had the option of detaining the suspects at the site of the initial encounter and either bringing the complainant to the site for his identification of the questioned articles or taking those items to him. Either situation would present a much stronger case for the position the Commonwealth presently urges."); *People v. Harris*, 15 Cal.3d 384, 124 Cal.Rptr. 536, 540 P.2d 632, 636 (1975)(explaining that usually less intrusive and more reasonable alternatives exist to pre-arrest relocation and noting that officers pursued none of the alternative procedures); *Florida v. Royer*, 460 U.S. 491, 504–06, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)(plurality)(same).

3. Indeed, if there were ten police officers at the crime scene while investigating the two detainees, and the officers were faced with the exigency of safety concerns for their fellow officers, relocating the detainees might very well be considered to be unreasonable under the totality of the circumstances and thus, an unconstitutional arrest.