2017 PA Super 403

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | | |
| STEPHEN MACKEY | | |
| Appellant | | No. 1460 EDA 2015 |

Appeal from the Judgment of Sentence April 13, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0010023-2014

BEFORE:  BOWES, J., MOULTON, J., and STEVENS, P.J.E.*

CONCURRING OPINION BY BOWES, J.:          **FILED DECEMBER 20, 2017**

The Honorable Geoffrey Moulton's Opinion cogently sets forth why the Commonwealth failed to establish reasonable suspicion of an ongoing crime pursuant to ***Florida v. J.L.***, 529 U.S. 266 (2000).  The trial court determined that exigent circumstances justified removing Appellant from the bus, with a subsequent determination that the officers possessed reasonable suspicion to pat down Appellant for a firearm due to actions learned after Appellant was seized.  The Opinion aptly explains why the invalid initial seizure requires this Court to ignore information learned after the seizure.  However, the trial court's application of exigent circumstances alongside reasonable suspicion analysis highlights the difficult Fourth Amendment question presented by this case.

* Former Justice specially assigned to the Superior Court.

"The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." ***Mincey v. Arizona***, 437 U.S. 385, 390 (1978) (quotation marks and citation omitted). A specifically-established exception to the warrant requirement was announced in the seminal case of ***Terry v. Ohio***, 392 U.S. 1 (1968), which, as the lead Opinion articulates, does not serve to justify the instant seizure.

The Commonwealth relies upon exigent circumstances as grounds for justifying the seizure. In so doing, the Commonwealth's argument incorporates exigency considerations into the reasonable suspicion of criminal activity inquiry: "Here, the totality of the circumstances established reasonable suspicion to believe that criminal activity **might** be afoot, and Officer O'Shaughnessy acted reasonably in addressing a serious threat." Commonwealth's brief at 8 (emphasis added).

In my view, such an approach misapplies ***Terry***, as the exigencies associated with any particular crime play no role when assessing the validity of a seizure under ***Terry***.[1] Thus, stating that the totality of the circumstances

---

[1] Exigencies can arise after a valid stop has occurred. ***See Commonwealth v. Revere***, 888 A.2d 694 (Pa. 2005) (some exigencies, particularly, need for safety and security, justify transporting a suspect during a ***Terry*** detention).

- 2 -

demonstrated that criminal activity "might" be afoot is doctrinally incompatible with **Terry**. To support a stop under **Terry**, the officer must articulate specific observations which "led him to reasonably conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity." **Commonwealth v. Caban**, 60 A.3d 120, 128 (Pa.Super. 2012) (citation omitted). The Commonwealth's statement that the officers had reason to believe that Appellant might be involved in criminal activity implicitly concedes that reasonable suspicion of an ongoing crime did not exist.

On the other hand, the Commonwealth's argument that the instant tip justified a seizure for investigative purposes, even if the tip did not amount to reasonable suspicion of an ongoing crime, is not without some force. "'[T]he ultimate touchstone of the Fourth Amendment,' we have often said, 'is reasonableness.'" **Michigan v. Fisher**, 558 U.S. 45, 47 (2009) (quoting **Brigham City, Utah v. Stuart**, 547 U.S. 398, 403 (2006)). Warrantless seizures and searches may be deemed reasonable if "the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." **Mincey**, **supra** at 394 (quotation marks and citation omitted).

The exigent circumstances doctrine is typically applied in the context of warrantless entries and searches of homes, with the exigency supported by probable cause of a crime plus some circumstance beyond the mere need to

- 3 -

investigate the crime. *See Commonwealth v. Fickes*, 969 A.2d 1251 (Pa.Super. 2009) (warrantless entry into garage permitted where officer in fresh pursuit had probable cause to believe appellant had been driving under the influence; BAC evidence would likely be lost by time warrant was secured); *Commonwealth v. Davido*, 106 A.3d 611 (Pa. 2014) (warrantless entry into residence was reasonable under totality of the circumstances as application of emergency aid doctrine due to inherent exigencies in domestic abuse cases); *Compare Commonwealth v. Bowmaster*, 101 A.3d 789 (Pa.Super. 2014) (assuming that probable cause to search shed and home existed, there was no reason to believe entry was needed to prevent violence, destruction of evidence, or escape, and therefore normal warrant requirement applied).

This case poses a vexing problem in that an armed individual in a crowded public bus may pose an exigency, *i.e.*, a risk to public safety even in the absence of criminal activity, as demonstrated by the fact that someone felt compelled to report the activity to the authorities.[2]  In the words of *Terry*, "[i]t would have been poor police work indeed" for the officers to simply ignore

_____

[2] There are also Second Amendment considerations lurking in these types of cases.  The Commonwealth notes that this tip occurred in a high crime area, which arguably creates a compelling law enforcement need to immediately investigate.  This same point can be cast in favor of the individual: A higher incidence of crime is a reason why an individual may feel compelled to carry a firearm for self-defense.  To this end, I note that the Commonwealth does not suggest or argue that carrying a firearm on a public bus violates the transit agency's rules or regulations.

the tip just because possession of a firearm is not *per se* illegal. **Terry**, **supra** at 23. **Terry** itself involved "a series of acts, each of them perhaps innocent in itself, but which taken together warranted further investigation." **Id**. at 22. Herein, the anonymous report offered no insight into whether the tipster was merely concerned with the presence of a firearm in general, or whether there was some other concerning behavior. Hence, I conclude that there was a strong governmental interest in investigating this tip, even setting aside the fact that carrying a firearm is not itself illegal.[3] 18 Pa.C.S. § 6106; 18 Pa.C.S. § 6108.

However, Appellant's presence on a public bus placed the officers herein in something of a constitutional Catch-22. The purported exigency justifying the police interaction, *i.e.* an armed man posing a potential threat to public safety, existed only if the tip itself was sufficiently reliable in its allegation that a firearm was present. The question is whether the Fourth Amendment

---

[3] On October 2, 2017, our Supreme Court granted a petition for allowance of appeal to address the constitutionality of a "bright line rule holding that possession of a concealed firearm in public is sufficient to create reasonable suspicion" is warranted. **Commonwealth v. Hicks**, 2017 WL 4351309 (Pa. 2017). Thus, **Hicks** may offer insight into whether the mere fact someone is carrying a concealed weapon, or is reasonably suspected to be, itself justifies a presumption of danger permitting a frisk. **See also United States v. Robinson**, 846 F.3d 694, 698 (4th Cir. 2017) (*en banc*) ("This appeal presents the question of whether a law enforcement officer is justified in frisking a person whom the officer has lawfully stopped and whom the officer reasonably believes to be armed, regardless of whether the person may legally be entitled to carry the firearm.").

demands corroboration given the nature of the anonymous tip. Consider that *J.L.* noted that the officers "would have had reasonable suspicion that J.L. was engaged in criminal activity **only if they could be confident that he was carrying a gun in the first place**." *Id*. at 273, n.1 (emphasis added). It is unclear how the uniformed officers herein could realistically fulfill that corroboration requirement in a timely fashion without boarding the bus. Therefore, the Commonwealth's attempt to apply exigent circumstances rationales is understandable.

In this regard, the fact that the exigent circumstances doctrine permits a warrantless **search** of a home implicitly supports the notion that the lesser intrusion of a warrantless **seizure** is likewise reasonable. Nevertheless, I view exigent circumstances and *Terry* as two separate branches of law, which independently operate as exceptions to the normal Fourth Amendment warrant requirement. To my knowledge, neither the Supreme Court of Pennsylvania nor the United States has held that the requisite quantum of reasonable suspicion of criminal activity waxes and wanes depending on the potential crime at issue. Therefore, I believe that the threat to public safety must be analyzed on its own, and not with reference to any particular crime. Language contained within *J.L.* supports that notion:

> The facts of this case do not require us to speculate about the circumstances under which the danger alleged in an anonymous tip might be so great as to justify a search even without a showing of reliability. We do not say, for example, that a report of a person carrying a bomb need bear the indicia of reliability we demand for

a report of a person carrying a firearm before the police can constitutionally conduct a frisk. Nor do we hold that public safety officials in quarters where the reasonable expectation of Fourth Amendment privacy is diminished, such as airports, *see Florida v. Rodriguez,* 469 U.S. 1, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984) (*per curiam*), and schools, *see New Jersey v. T.L.O.,* 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), cannot conduct protective searches on the basis of information insufficient to justify searches elsewhere.

*J.L.*, *supra* at 273–74 (2000). As illustrated by the petition for allowance of appeal in *Hicks*, the dangers posed by the mere presence of a firearm with respect to Fourth Amendment analysis is a matter of dispute. Moreover, the Commonwealth did not allege that Appellant's expectation of privacy was diminished by virtue of his presence on a public carrier.

That said, I note that the United States Supreme Court arguably distanced itself from *J.L.* in *Navarette v. California*, 134 S.Ct. 1683, 1688 (2014). Therein, the High Court considered the reliability of an anonymous 911 call, which stated that a silver Ford F-150 pickup bearing license plate 8D94925 ran the caller's vehicle off the road. The tipster reported that the vehicle was heading southbound near a certain mile marker. The Court held that the tip was sufficiently reliable to provide reasonable suspicion of an ongoing DUI. This conclusion relied, in part, on the fact that the caller reported she had been run off the road. "By reporting that she had been run off the road by a specific vehicle—a silver Ford F–150 pickup, license plate 8D94925—the caller necessarily claimed eyewitness knowledge of the alleged

- 7 -

dangerous driving. That basis of knowledge lends significant support to the tip's reliability." *Id*. at 1689.

*Navarette* then distinguished the reliability of that tip from the one in *J.L.*: "This is in contrast to *J.L.*, where the tip provided no basis for concluding that the tipster had actually seen the gun." *Id*. The reasoning employed in *Navarette* is difficult to square with *J.L.*'s statement that the "reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *J.L.*, *supra* at 272. It is unclear why the tip in *Navarette* was deemed reliable in its description of illegal behavior, *i.e.* an ongoing DUI, as opposed to merely supplying a reliable description of the vehicle engaged in that behavior.[4] Hence, one could easily rephrase *Navarette* to state in this case that the specific level of information supplied by the caller provided a basis to conclude that the tipster necessarily claimed direct knowledge of observing a firearm.

In this respect, I observe that in 2009, Chief Justice Roberts, joined by Justice Scalia, filed a dissent from denial of *certiorari* in a case that squarely presented the issue of whether drunk driving warrants special treatment under

---

[4] The four dissenting Justices in *Navarette* criticized the majority's attempts to distinguish *J.L.* and other anonymous tipster cases. "Today's opinion does not explicitly adopt such a departure from our normal Fourth Amendment requirement that anonymous tips must be corroborated; it purports to adhere to our prior cases, such as [*J.L.*] . . . Be not deceived." *Id*. at 1692 (Scalia, J., dissenting).

the Fourth Amendment.  Chief Justice Roberts noted the dilemma faced by police officers when a tip warrants police investigation but is nonetheless insufficient on its face to justify a seizure.

> [T]he Virginia Supreme Court . . . decision below commands that police officers following a driver reported to be drunk *do nothing* until they see the driver actually do something unsafe on the road—by which time it may be too late.
>
> . . . .
>
> I am not sure that the Fourth Amendment requires such independent corroboration before the police can act, at least in the special context of anonymous tips reporting drunk driving. This is an important question that is not answered by our past decisions, and that has deeply divided federal and state courts. The Court should grant the petition for certiorari to answer the question and resolve the conflict.

*Virginia v. Harris*, 558 U.S. 978 (2009) (Roberts, C.J., dissenting from denial of *certiorari*).

The same consideration extends to this scenario.  Had the officers dallied in an attempt to corroborate the tip and violence erupted inside the bus, any police action would come too late.  Thus, while Judge Moulton correctly notes that an automatic firearms exception was rejected by *J.L.*, that observation was made in the context of a *Terry* analysis, not exigent circumstances.  I am thus not firmly convinced that the Fourth Amendment required independent corroboration by the police officers under these facts.

Despite my reservations, this case is so factually similar to *J.L.* that I cannot conclude that the key distinction, Appellant's presence on a public bus,

warrants a contrary outcome. *Hicks* may ultimately offer guidance on the question of whether the instant detention was reasonable, even in the absence of reasonable suspicion of a crime. Until such time, I agree that the similarities between this case and *J.L.* require reversal.