**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DEON COLEMAN, | |
| Appellant | No. 71 WDA 2015 |

Appeal from the Judgment of Sentence of November 13, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0015970-2012

BEFORE:  OLSON, STABILE AND MUSMANNO, JJ.

MEMORANDUM BY OLSON, J.:                    FILED: June 30, 2016

Appellant, Deon Coleman, appeals the judgment of sentence entered on November 13, 2014 in the Criminal Division of the Court of Common Pleas of Allegheny County.  We affirm.

The trial court summarized the relevant facts as follows:

The credible facts adduced at [Appellant's] suppression hearing established the following events:  Pittsburgh Police officers, including Officer Abel, were dispatched to the area of North Charles Street and Kenn Avenue in the City of Pittsburgh for a report of a robbery.  At the scene, the victim reported that he was operating a jitney and had a passenger in his vehicle.  The passenger exited the vehicle and advised the victim that a friend was coming to pay the fare.  A short, young, thin black male then approached the victim's vehicle and pointed a gun at the victim while demanding money.  The victim gave the black male money and the black male fled down North Charles Street.  The victim observed the black male enter a door on the far left end of row houses.  The victim relayed these observations to Officer Abel.

Officer Abel went to the residence where the black male was observed entering. He knocked on the door. Nobody immediately answered. A second floor window was then opened and [Appellant] looked out and asked who was knocking. Officer Abel identified himself as "Pittsburgh Police" and asked [Appellant] to come to the door. After a minute or two, Officer Abel knocked on the door again. [Appellant] answered the door. [Appellant] did not fit the description of the black male that was provided by the victim.

Upon answering the door, [Appellant] was advised that a witness had seen a robbery suspect enter the residence. [Appellant] advised Officer Abel that nobody was in the residence. Officer Abel informed [Appellant] that he was still going to check inside the residence. Officer Abel asked [Appellant] to step out of the residence. [Appellant] advised Officer Abel that he did not have permission to enter the residence. Other officers detained [Appellant] and Officer Abel entered the residence. Officer Abel was able to clear the residence and he did not find anyone inside the residence. He did, however, find heroin and benzylpiperazine, commonly referred to as ecstasy, in the bedroom sitting in plain view on the dresser. This room was the same room [Appellant] occupied when he addressed Officer Abel from the second floor window.

Officer Abel returned outside. He advised [Appellant] that he found cocaine in the residence. [Appellant] blurted out that the substance wasn't cocaine: it was ecstasy. Officer Abel then explained that he knew the substance was ecstasy but he misidentified it because he wanted to get [Appellant] to admit that the substance was ecstasy. At that point, [Appellant's] girlfriend showed up at the residence. After encouragement from [Appellant], she told Officer Abel that she would not consent to a search of the residence. Officer Abel and other officers then secured the scene and Officer Abel obtained a search warrant to search the residence. During the search, Officer Abel discovered 698 stamp bags of heroin (22.71 grams) from the upstairs bedroom closet. [Officer Abel also recovered] 11 blue pills (benzylpiperazine), one pink pill (benzylpiperazine), a clear-knotted bag of partially crushed pills (benzylpiperazine) and $2,135[.00] from the upstairs bedroom.

After th[e trial c]ourt granted in part and denied in part [Appellant's] suppression motions based on the evidence set

forth above, [Appellant] proceeded to a stipulated non-jury trial. Prior to the commencement of trial, the following exchange occurred on the record:

> [Assistant District Attorney]: This is going to go in by way of stipulation. I would move t[o] incorporate all of the previous testimony the [trial c]ourt has taken during the course of the suppression hearing and then would supplement that with additional facts.
>
> THE COURT: Is that the way we are proceeding, [defense counsel]?
>
> [Defense Counsel]: That's the way I have offered to proceed and will stipulate. If there's something [the assistant district attorney] says I won't stipulate to, I will speak up, but I don't anticipate that will occur.

[Following the non-jury trial, the court found Appellant guilty of simple possession[1] and possession with intent to distribute (benzylpiperazine),[2] simple possession[3] and possession with intent to distribute (heroin),[4] and possession of drug paraphernalia.[5] On November 13, 2014, the court sentenced Appellant to an aggregate term of 51 to 156 months' incarceration. After the trial court denied post-sentence motions, Appellant filed a timely notice of appeal on January 12, 2015. Pursuant to order of court, and after extensions of time in which to obtain transcripts, Appellant filed a concise statement of errors complained of on appeal on June 26, 2015. The trial court issued its opinion on November 5, 2015.]

Trial Court Opinion, 9/5/15, at 2-3.

_____

[1] 35 P.S. § 780-113(a)(16).

[2] 35 P.S. § 780-113(a)(30).

[3] 35 P.S. § 780-113(a)(16).

[4] 35 P.S. § 780-113(a)(30).

[5] 35 P.S. § 780-113(a)(32).

Appellant raises the following questions for our review:

Did the trial court err when it failed to order suppression in this case, as police did not have consent to search the property where [Appellant] was found, and there were no exigent circumstances to obviate the need for a search warrant?

Is the sentence imposed in this case manifestly excessive in that sentencing was based, in part, upon facts not of record and the sentencing court's previous cases, none of which had relevance to [Appellant's] need for rehabilitation, the society's need for protection, and the gravity of [Appellant's] offense?

Appellant's Brief at 6.

We carefully reviewed the certified record, the submissions of the parties, and the thorough opinion of able the trial court. Based upon our review, we concur in the trial court's conclusion that the Commonwealth established exigent circumstances that obviated the need for a search warrant. We also agree with the trial court that it did not abuse its discretion in fixing the sentence imposed in this case. Because we find that the trial court adequately and accurately addressed the claims presented on appeal, we adopt the trial court's opinion as our own and direct the parties to include a copy of the court's opinion in all future filings related to our disposition of this appeal.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/30/2016

FILED

2015 NOV -5 PM 2:00

DEPT OF
COURT

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA ）
）
vs. ）          CC No. 201215970
）
DEON COLEMAN, ）
）
Defendant. ）
）

## O P I N I O N

Mariani, J.

This is a direct appeal in which the defendant appeals the Judgment of Sentence of November 13, 2014 which became final on December 12, 2014 when this Court denied post-sentencing motions. After a stipulated non-jury trial, the defendant was found guilty of possession and possession with intent to deliver benzylpiperazine, possession and possession with intent to deliver heroin and possession of drug paraphernalia. Relative to the conviction for possession with intent to deliver heroin, this Court sentenced the defendant to a term of imprisonment of not less than 33 months nor more than 120 months. Relative to the conviction for possession with intent to deliver benzylpiperazine, this Court sentenced the defendant to a consecutive term of imprisonment of not less than 18 months nor more than 36 months. No additional penalties were imposed at the remaining counts. This timely appeal followed.

# APPENDIX A

The credible facts adduced at the suppression hearing established the following events: Pittsburgh Police officers, including Officer Abel, were dispatched to the area of North Charles Street and Kenn Avenue in the City of Pittsburgh for a report of a robbery. At the scene, the victim reported that he was operating a jitney and had a passenger in his vehicle. The passenger exited the vehicle and advised the victim that a friend was coming to pay the fare. A short, young, thin black male then approached the victim's vehicle and pointed a gun at the victim while demanding money. The victim gave the black male money and the black male fled down North Charles Street. The victim observed the black male enter a door on the far left end of row houses. The victim relayed these observations to Officer Abel.

Officer Abel went to the residence where the black male was observed entering. He knocked on the door. Nobody immediately answered. A second floor window then opened and the defendant looked out and asked who was knocking. Officer Abel identified himself as "Pittsburgh Police" and asked the defendant to come to the door. After a minute or two, Office Abel knocked on the door again. The defendant answered the door. The defendant did not fit the description of the black male that was provided by the victim.

Upon answering the door, the defendant was advised that a witness had seen a robbery suspect enter the residence. The defendant advised Officer Abel that nobody was in the residence. Officer Abel informed the defendant that he was still going to check

2

inside the residence. Officer Abel asked the defendant to step out of the residence. The defendant advised Officer Abel that he did not have permission to enter the residence. Other officers detained the defendant and Officer Abel entered the residence. Officer Abel was able to clear the residence and he did not find anyone inside the residence. He did, however, find heroin and benzylpiperazine, commonly referred to as ecstasy, in the upstairs bedroom sitting in plain view on the dresser. This room was the same room the defendant occupied when he addressed Officer Abel from the second floor window.

Officer Abel returned outside. He advised the defendant that he found cocaine in the residence. The defendant blurted out that the substance wasn't cocaine; it was ecstasy. Officer Abel then explained that he knew the substance was ecstasy but he misidentified it because he wanted to get the defendant to admit that the substance was ecstacy. At that point, the defendant's girlfriend showed up at the residence. After encouragement from the defendant, she told Officer Abel that she would not consent to a search of the residence. Officer Abel and other officers then secured the scene and Officer Abel obtained a search warrant to search the residence. During the search, Officer Abel discovered 698 stamp bags of heroin (22.71 grams) from the upstairs bedroom closet, 11 blue pills (benzylpiperazine), one pink pill (benzylpiperazine), a clear-knotted bag of partially crushed pills (benzylpiperazine) and $2,135 from the upstairs bedroom.

After this Court granted in part and denied in part the defendant's suppression motions based on the evidence set forth above, the defendant proceeded to a stipulated

non-jury trial. Prior to the commencement of trial, the following exchange occured on the record:

> MR. SACHS (the Assistant District Attorney): This is going to go in by way of stipulation. I would move the incorporate all of the previous testimony the Court has taken during the course of the suppression hearing and then would supplement that with additional facts.
>
> THE COURT: Is that the way we are proceeding, Mr. Haber?
>
> MR. HABER (defense counsel): That's the way I have offered to proceed and will stipulate. If there's something Mr. Sachs says I won't stipulate to, I will speak up but I don't' anticipate that will occur.

A non-jury trial then occurred and the defendant was convicted and sentenced as set forth above. This appeal followed.

Defendant first claims that the drugs and money seized from the residence should have been suppressed because Officer Abel did not have lawful cause to initially enter the residence without a search warrant. The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures, thereby ensuring the "right of each individual to be let alone." In the Interest of D.M., 566 Pa. 445m 781 A.2d 1161, 1163, (Pa. 2001); Commonwealth v. Blair, 394 Pa. Super. 207, 575 A.2d 593, 596 (Pa.Super. 1990). As a general rule, a search warrant is required before police may conduct any search. Commonwealth v. White, 669 A.2d 896, 900 (Pa.1995). A warrantless search or seizure is presumptively unreasonable under the Fourth Amendment, subject to a few specifically established, well-delineated exceptions. Horton v. California, 496 U.S. 128, 134, n.4,

4

110 S.Ct. 231, 110 L.Ed.2d 112 (1990). Warrantless searches are also presumptively unreasonable under Article I, Section 8 of the Pennsylvania Constitution. Commonwealth v. McCree, 924 A.2d 621, 627 (Pa. 2007).

This Court believes that the warrantless entry was justified by exigent circumstances. As set forth in Commonwealth v. Walker, 836 A.2d 978, 981 (Pa. 2003) citing Commonwealth v. Roland, 637 269, 271 (Pa. 1994), the Pennsylvania Supreme Court has identified a number of factors to consider in determining whether a search is justified by exigent circumstances:

> (1) the gravity of the offense; (2) whether there is a reasonable belief that the suspect is armed; (3) whether there is a clear showing of probable cause; (4) whether there is a strong showing that the suspect is within the premises to be searched; (5) whether there is a likelihood that the suspect will escape; (6) whether the entry was peaceable; (7) the time of the entry, *i.e.*, day or night; (8) whether the officer was in hot pursuit of a fleeing felon; (9) whether there is a likelihood that evidence may be destroyed; and (10) whether there is a danger to police or others.

Additionally, it has been well established that exigent circumstances exist where there is a threat of physical harm. Commonwealth v. Ehrsam, 355 Pa. Super. 40, 512 A.2d 1199 (Pa.Super. 1986). See Commonwealth v. Fickes, 969 A.2d 1251, 1255 (Pa.Super. 2009)(Exigent circumstances exist where there is a "danger to police or other persons inside...the dwelling"). Justice Castille, in Commonwealth v. Revere, 585 Pa. 262, 888 A.2d 694 (Pa. 2005), referred to "exigent circumstances" as a term of art that

5

describes a situation in which "a more orderly process must yield to an urgent necessity for immediate action." Id. at 698 fn.5.

Exigent circumstances to search a residence have been held to exist when officers are in "hot-pursuit" of a suspected offender who enters a residence. See Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S. Ct. 1642, 18 L. Ed. 2d 782 (1967)(Exigent circumstances existed for entry into a residence where police received reports of an armed robbery and where the suspect entered the home less than five minutes before the police arrived); Commonwealth v. Dommel, 885 A.2d 998 (Pa.Super. 2005)(Police lawfully entered a residence in hot pursuit where they were following a DUI suspect); Commonwealth v. Jerry, 470 A.2d 601 (Pa.Super. 1983)(Exigent circumstances existed for police to enter home and arrest armed robbery suspects where the crime occurred only 15 minutes previously and one block away). This Court believes that probable cause existed for Officer Abel to enter the residence. Officer Abel properly relied on a report of a robbery victim that the armed suspect fled the scene and entered a specific, identified residence. The report to Officer Abel occurred minutes after the armed robbery and the victim was very specific and identified the exact location where he observed the armed actor enter. There was a risk of physical harm to the residents and to the police officers in pursuit due to the fact that an armed individual entered the residence in an effort to flee from the police. Under these circumstances, this Court believes that immediate action was warranted to enter the residence to pursue an armed robbery suspect. Accordingly, the suppression motion was denied.

Defendant next complains that this Court erred in permitting the introduction of the defendant's testimony from a prior civil eviction proceeding against the defendant at trial. The defendant did not object to the admission of this evidence at trial and, therefore, this issue is waived. See Pa.R.A.P. 302(a) (stating that "issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); Commonwealth v. Lawson, 789 A.2d 252, 253 (Pa. Super. 2001)(explaining that "even issues of constitutional dimension may not be raised for first time on appeal."); Commonwealth v. Cain, 906 A.2d 1242, 1244; (Pa.Super. 2006). As set forth above, defendant's counsel stipulated to the use of all testimony from the suppression hearing and indicated that he would advise the Court if he had any objection to additional evidence elicited by the Commonwealth. He did not offer any such objections to the testimony from the civil matter. Accordingly, this claim is waived.

Defendant's last claim is that this Court imposed a manifestly excessive sentence. A claim that a sentence is excessive is a challenge to the discretionary aspects of the sentence. Commonwealth v. Hoag, 665 A.2d 1212 (Pa. Super. 1995). This claim is, however, unfounded. This Court's sentence was proper. A sentencing judge is given a great deal of discretion in the determination of a sentence, and that sentence will not be disturbed on appeal unless the sentencing court manifestly abused its discretion." Commonwealth v. Boyer, 856 A2d 149, 153 (Pa. Super. 2004), citing Commonwealth v. Kenner, 784 A.2d 808, 811 (Pa.Super. 2001) appeal denied, 568 Pa. 695, 796 A.2d 979 (2002); 42 Pa.C.S.A. §9721. An abuse of discretion is not a mere error of judgment; it involves bias, partiality, prejudice, ill-will, or manifest unreasonableness. See

7

Commonwealth v. Flores, 921 A.2d 517, 525 (Pa.Super. 2007), citing Commonwealth v. Busanet, 817 A.2d 1060, 1076 (Pa. 2002).


The imposition of consecutive rather than concurrent sentences lies within the sound discretion of the sentencing court. Challenges to the exercise of this discretion ordinarily do not raise a substantial question. Commonwealth v. Pass, 914 A.2d 442, 446-47 (Pa.Super. 2006). Commonwealth v. Lloyd, 878 A.2d 867, 873 (Pa. Super. 2005), appeal denied, 585 Pa. 687, 887 A.2d 1240 (2005) (citing Commonwealth v. Hoag, 665 A.2d 1212, 1214 (Pa. Super. 1995). Title 42 Pa.C.S.A. § 9721 affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed. Commonwealth v. Marts, 889 A.2d 608, 612 (Pa. Super. 2005) (citing Commonwealth v. Graham, 661 A.2d 1367, 1373 (1995)). "In imposing a sentence, the trial judge may determine whether, given the facts of a particular case, a sentence should run consecutive to or concurrent with another sentence being imposed." Commonwealth v. Perry, 883 A.2d 599 (Pa. Super. 2005), quoting Commonwealth v. Wright, 832 A.2d 1104, 1107 (Pa.Super.2003); see also Commonwealth v. L.N., 787 A.2d 1064, 1071 (Pa.Super.2001), appeal denied 569 Pa. 680, 800 A.2d 931 (2002). As the Superior Court has stated in Commonwealth v. Mastromarino, 2 A.3d 581, 587 (Pa.Super. 2010), "[t]hus, in our view, the key to resolving the preliminary substantial question inquiry is whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case."

Furthermore, the "[s]entencing court has broad discretion in choosing the range of permissible confinements which best suits a particular defendant and the circumstances surrounding his crime." Boyer, supra, quoting Commonwealth v. Moore, 617 A.2d 8, 12 (1992). Discretion is limited, however, by 42 Pa.C.S.A. §9721(b), which provides that a sentencing court must formulate a sentence individualized to that particular case and that particular defendant. Section 9721(b) provides: "[t]he court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense, as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant . . . . " Boyer, supra at 153, citing 42 Pa.C.S.A. §9721(b). Furthermore,

> In imposing sentence, the trial court is required to consider the particular circumstances of the offense and the character of the defendant. The trial court should refer to the defendant's prior criminal record, age, personal characteristics, and potential for rehabilitation. However, where the sentencing judge had the benefit of a presentence investigative report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.

Boyer, supra at 154, citing Commonwealth v. Burns, 765 A.2d 1144, 1150-1151 (Pa.Super. 2000) (citations omitted).

Moreover, "the sentencing court must state its reasons for the sentence on the record." Boyer, supra at 154, citing 42 Pa.C.S.A. § 9721(b). The sentencing judge can satisfy the requirement that reasons for imposing sentence be placed on the record by indicating that he or she has been informed by the presentence report; thus properly

9

considering and weighing all relevant factors. Boyer, supra, citing Burns, supra, citing Commonwealth v. Egan, 451 Pa.Super. 219, 679 A.2d 237 (1996). Additionally, "where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code". Commonwealth v. Moury, 992 A.2d 162, 171 (Pa. Super. 2010) *see also* Commonwealth v. Cruz-Centeno, 447 Pa. Super. 98, 668 A.2d 536 (Pa.Super. 1995), *appeal denied,* 544 Pa. 653, 676 A.2d 1195 (1996) (stating combination of PSI and standard range sentence, absent more, cannot be considered excessive or unreasonable).

The record in this case supports the sentence imposed by this Court. The sentencing record reflects that this Court considered the presentence report, the testimony presented at trial and at sentencing and all other relevant factors. The defendant did not object to the substance of the information contained in the presentence report. Each sentence imposed was within the standard range of the sentencing guidelines. Although the sentences were imposed consecutively, they were done so to recognize that the defendant was involved in the trafficking of two separate drugs. The sentencing record reflects that in imposing sentence, the Court considered the that the defendant had previous convictions for dealing drugs and that he had served substantial prison time for those offenses. This Court was convinced that the defendant continues to choose not to conform his conduct to the dictates of the laws prohibiting drug trafficking. The Court further recognized the impact that the defendant's conduct had on society in general by circulating drugs into the community and contributing to the many unfortunate

10

consequences of drug use. Based on these facts, this Court does not believe the sentence imposed in this case was excessive.

Accordingly, the judgment should be affirmed.

By the Court:

Date: November 5, 2015

Anthony Mariani

J.